UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4633

BERNARDO MERCEDEZ-GONZALEZ,
a/k/a Jorge Pizarro,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
James A. Beaty, Jr., District Judge.
(CR-96-258)

Submitted: March 16, 1999

Decided: April 9, 1999

Before MICHAEL and KING, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Louis C. Allen, III, Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, Lisa B. Boggs, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bernardo Mercedez-Gonzalez appeals the 235-month sentence he received after he pled guilty to distribution of crack cocaine, 21 U.S.C. § 841(a) (1994). He contends that eight ounces of crack he negotiated to sell an undercover agent should not have been used to calculate his offense level under U.S. Sentencing Guidelines Manual § 2D1.1 (1995). We affirm the sentence.

Mercedez-Gonzalez (using the name Jorge Pizarro) was present in a fortified apartment* in October 1996 when state undercover agent Kevin Canty bought 25.2 grams of crack from Poppy, a Hispanic male. On October 31, 1996, when Canty tried to buy crack from Poppy again, Mercedez-Gonzalez told him that Poppy had gone to Puerto Rico. However, Mercedez-Gonzalez sold Agent Canty two and a half ounces (65.8 grams) of crack. Canty reduced his purchase from three ounces to two and a half ounces after they dickered about the price. Canty estimated that Mercedez-Gonzalez had "a couple more ounces" in the bag from which he weighed out three ounces initially.

On November 12, 1996, Canty and an agent from the Drug Enforcement Administration (DEA) went to the apartment and Mercedez-Gonzalez agreed to sell Canty eight ounces (226.8 grams) of crack for $8600, a reduced price. They agreed to meet the following week after Mercedez-Gonzalez made a trip to New York. However, Canty and the DEA agent did not contact Mercedez-Gonzalez until December 5, 1996. On that day, when Canty told Mercedez Gonzalez that he was ready for the eight-ounce purchase, Mercedez-Gonzalez told Canty he did not sell drugs. A search of the apartment where the prior sales had taken place resulted in the seizure of crack cocaine residue, scales, and some money, including marked police

_____

*There were steel bars across the door on the inside.

2

funds. Mercedez-Gonzalez was arrested and later pled guilty to crack distribution.

At his sentencing, Mercedez-Gonzalez objected to the inclusion of the eight ounces in the offense level calculation. However, the district court found that Mercedez-Gonzalez was capable of supplying the agent with eight ounces of crack and intended to do so when he made the agreement, even though the sale never took place.

We review the district court's factual determination under the clearly erroneous standard. See United States v. Williams, 152 F.3d 294, 301 (4th Cir. 1998). Here, we cannot find that the district court clearly erred in making its determination. Canty testified about his dealings with Mercedez-Gonzalez, but Mercedez-Gonzalez provided no evidence of his inability or unwillingness to sell eight ounces of crack beyond the fact that the eight-ounce sale did not take place.

Accordingly, we affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED